### In the Matter of FERRO CONTRACTING CO., Inc.
### No. B–1011–64.

United States District Court
D. New Jersey.
July 5, 1966.

Allan L. Tumarkin, Newark, N. J., for trustee.

Toner, Crowley, Woelper & Vanderbilt, by Roger Nelson, Newark, N. J., for Livingston Nat. Bank.

## OPINION

WORTENDYKE, District Judge:

The trustee in bankruptcy of Ferro Contracting Co., Inc., a New Jersey corporation, has petitioned this Court for review of an order of the Referee, Honorable William Lipkin, dated July 29, 1965, sustaining the validity of a claimed lien, asserted by Livingston National Bank, upon the proceeds of sale of chattels of the bankrupt, mortgaged to the Bank on June 19, 1963 to secure an indebtedness evidenced by the bankrupt's promissory note for $32,325 of the same date.

The chattels scheduled in the mortgage were the following:

One 1957 Michigan front end loader model 125A S/N 13772 Wavkesha 195 GK Gas, 2 yd. bucket with recap 1400 x 2412 ply tires;

One 1956 International Model TD–18 (181 Series) diesel crawler tractor, wide gauge, complete with International hydraulic bulldozer, canopy cab, Serial No. TD181–35815, Bulldozer No. B–18D–1038;

One 1957 International Model TD–18 (182 Series) diesel crawler tractor, wide gauge, complete with International Model 18D–2 hydraulic bulldozer, Serial No. 7D182–37262, Bulldozer No. 18D2–945.

One 1956 model TD–24 International Diesel crawler tractor with torque converter, cable operated bulldozer, model P–29 power control unit, and Skeleton Cab. Serial No. TD–241–697, Engine No. TDEM–781, Dozer No. B24D–693, PCV No. P–29–1365.

One new model 22–B Bucyrus-Erie backhoe with D318 Caterpillar diesel engine, 30″ treads long frames ⅞ cubic yard dipper; with H & L teeth and side cutters ½ cubic yard hoe dipper with H & L teeth and side cutters machine serial No. 122159, engine serial No. 5V19610.

On the date of the note and mortgage (June 19, 1963), the Bank filed a Financing Statement in the office of the Secretary of State of New Jersey, setting forth the name and address of the bankrupt as the debtor, the name and address of the Bank as the secured party, and the foregoing five items of personal property listed in the purported chattel mortgage. No Financing Statement was filed in the office of the Director of the Division of Motor Vehicles of New Jersey.

The promissory note and mortgage given by the bankrupt to the Bank provided that the loan was payable in 30 monthly installments of $1,077.50 each, commencing on July 19, 1963, and 13 of these installments were paid as of July 31, 1964, leaving an unpaid balance of $18,317.50 as of the latter date. Upon the occurrence of the default in the August 1964 installment, the Bank employed a constable to seize the chattels and advertise them for public sale. Three of the articles were located in Matawan and two in Wayne. They were transported by an independent contractor to

its place of business in Whippany, where the sale was advertised to take place on September 21, 1964. The sale was initially enjoined by this Court, but held on November 9, 1964 by the bankrupt's Receiver, pursuant to the Referee's order. The total sum realized from this sale was $26,900. The sale was confirmed on November 12, 1964, subject to the Bank's proof of lien upon the proceeds. Upon the hearing thereon of February 11, 1965, the Trustee challenged the validity of the Bank's claimed lien on two grounds, one of which is urged upon the present review, i. e., that the lien is ineffective because the chattels listed in the mortgage were "motor vehicles" within the intendment of N.J.S.A. 39:1–1 et seq. and the Bank failed to file the notice of lien in accordance with the requirement of N.J.S.A. 39:10–11, subd. C. The Trustee asserts that the sole question before this Court is whether the chattels involved herein are "vehicles" within the intent and meaning of the New Jersey Motor Vehicle Act and, if the mortgaged chattels are vehicles, that the lien should be perfected in accordance with N.J.S.A. 39:10–11, subd. C by notation on the Certificate of Title issued by the Division of Motor Vehicles. The Trustee also seeks review of the allowances to the Bank for expenses and disbursements and counsel fees, maintaining that such expenses were incurred and such services performed primarily after the bankruptcy petition was filed.

A Financing Statement covering the subject chattels was filed on June 19, 1963 in the office of the Secretary of State. If these chattels may be properly deemed "equipment" under the Uniform Commercial Code, N.J.S.A. 12A:9–109 (2), then such place of filing would be proper and effective under N.J.S.A. 12A:9–401(1) (c). However, if these chattels are "motor vehicles" within the intendment of N.J.S.A. 39:1–1 and 39:-10–2 and each chattel is " * * * a motor vehicle required to be licensed" under N.J.S.A. 12A:9–302(1) (c) and (d) and thereby subject to the provisions of N.J.S.A. 12A:9–302(3) (b), then the proper place of filing in order to perfect a security interest would be with the Director of the Division of Motor Vehicles in accordance with N.J.S.A. 39:10–11, subd. C as read together with the pertinent section of the Uniform Commercial Code, N.J.S.A. 12A:9–302(4).

It is necessary to examine pertinent provisions of the Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:-10–1 et seq. and the Uniform Commercial Code, N.J.S.A. 12A:1–101 et seq. As an introduction to such examination, the following observations should be made:

1. The general purpose of the Motor Vehicle Certificate of Ownership Law, as set forth in Title 39:10–3, is " * * * to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state."

2. Title 39:1–1 defines a "motor vehicle" as including " * * * all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks." Title 39:10–2, under the definition of "New Motor Vehicle", defines motor vehicle as including " * * * all such vehicles propelled otherwise than by muscular power, and motor cycles, trailers and tractors, excepting such vehicles as run only upon rails or tracks."

3. The type of "motor vehicle" to which I address myself in this case is " * * * *a motor vehicle required to be licensed*" under N.J.S.A. 12A:9–302(1) (c) and (d). [Emphasis added]

4. Prior to the enactment of the Uniform Commercial Code, research discloses no statutory definition of "equipment" in New Jersey law.

The Referee, in his Opinion, stated that "* * * the type of chattels we are concerned with in this case because of their nature, description and use cannot be deemed to be 'motor vehicles' * * *" and further that "* * * since the chattels could not transport property or persons, but were of themselves the end-result product * * * [this] compelled determination that the Motor Vehicle Act was not to be looked to but rather the Uniform Commercial Code in establishing whether a valid lien existed." These quoted portions of the Referee's Opinion do not set forth the test determinative of whether the subject chattels were "motor vehicles" or "equipment". The statutory definitions of a motor vehicle under Titles 39:1–1 and 39:10–2 do not speak of the nature, or use, of the motor vehicle; nor can the question be resolved by noting that the chattels "* * * could not transport property or persons * * *".[1] The test is whether these chattels can be placed within the intendment of the definition of a "motor vehicle" and the purpose of the legislation under the Motor Vehicle Certificate of Ownership Law. To determine this, one must first look to the definition of "equipment" under the Uniform Commercial Code.

Goods are "equipment" if they are used or bought for use primarily in business (including farming or a profession) * * or if the goods are not included in the definitions of inventory, farm products or consumer goods. N.J.S.A. 12A:9–109 (2). Immediately following this section, under Uniform Commercial Code Comment at page 358, it is stated:

"The principal definition of equipment is a negative one: goods used in a business (including farming or a profession) which are not inventory and not farm products. Trucks, rolling stock, tools, machinery are typical. It will be noted furthermore that any goods which are not covered by one of the other definitions in this section are to be treated as equipment."

Can this mean that, merely because goods are (1) used primarily in business, and (2) not included in the definitions of either "inventory" or "farm products", such goods are of necessity "equipment"? I think not. For example, the Michigan front-end loader, which is involved in this case, was (1) used primarily in business and (2) did not meet the definitions of either "inventory" or "farm products"; nevertheless it met the definition of "motor vehicle" under New Jersey law and, as some evidence of its status as a "motor vehicle", was the subject of a Certificate of Ownership from the Division of Motor Vehicles.

■■ In assessing the intent of the New Jersey legislature in regard to what items or chattels were to be included within the definition of "motor vehicle" under N.J.S.A. 39:10–2, it is interesting to note that the legislature amended this statutory provision, effective March 29, 1965, to include a definition for a "nonconventional type motor vehicle".

" 'Nonconventional type motor vehicle' means every vehicle *not designed or used primarily for the transportation of persons or property* and *only incidentally operated or moved over a highway*, including, but not limited to ditch-digging apparatus, well-boring apparatus, *road and general purpose construction and maintenance machinery*, asphalt spreaders * * * bucket loaders * * * leveling graders * * * *earth-moving carryalls* * * power shovels * * * *earth-moving equipment* * * *. The Director of the Division of Motor Vehicles shall

[1]. In regard to the transportation of persons or property, see the definition of "nonconventional type motor vehicle" which, though not controlling in this case, is substantially set forth in the text for the purpose of casting light upon legislative intent. I find the definition of "vehicle" under Title 39:1–1 ineffectual to

destroy the validity of what has been said here, for the reason that "* * * every device in, upon or by which a person * * * is or may be transported upon a highway * * *" would, it seems, of necessity require the presence of a person aboard to operate such device.

have power to [prescribe] what further vehicles or types of vehicles, not specified in this paragraph, shall be included in the category of nonconventional type motor vehicles." [Italics added for emphasis]

Despite the fact that this statutory definition was not in effect at the time of the June 19, 1963 transaction, and mindful that this definition can have no bearing upon this case, it is still some indication that the subject chattels would have been more specifically included originally within the definition of "motor vehicle" had the legislature foreseen the type question which exists in this case.[2] Further, there appears to be no doubt that the subject chattels were " * * * required to be licensed" within the meaning of N.J.S.A. 12A:9–302(1) (c) and (d). N.J.S.A. 39:3–20.[3]

I therefore hold that:

1. The subject chattels are "motor vehicles" within the intendment of Titles 39:1–1 and 39:10–2.

2. The subject chattels are " * * * required to be licensed" within the meaning of Title 12A:9–302(1) (c) and (d).

3. The Financing Statement, by reason of Title 12A:9–302(3) (b), should have been filed with the Director of the Division of Motor Vehicles in accordance with Title 39:10–11C, pursuant to the direction of Title 12A:9–302(4).

It necessarily follows that the Bank, by failing to properly file in accordance with law, has no perfected security interest in these motor vehicles, and cannot successfully claim a lien upon the proceeds of sale here.[4] N.J.S.A. 12A:9–306 (4), which states that, in the event of insolvency proceedings instituted by or against a debtor, there is no right to "identifiable cash proceeds" unless the claimant has a *perfected* security interest. The Trustee in bankruptcy was a "lien creditor" from the date of the filing of the petition, Title 12A:9–301 (3),[5] and the unperfected security interest of the Bank was subordinate to the rights of the Trustee, Title 12A:9–301 (1) (b).

With respect to the provisions of the Referee's Order allowing the claimant Bank the sum of $250 for expenses and reimbursements, and a counsel fee of $1,015, the expenses claimed were incurred after the bankruptcy petition had been filed, as of which date the right, title, and interest of the Trustee had attached and assumed priority.

Accordingly, the petition for review of the Referee's Order of July 29, 1965 is granted, and said Order is reversed. This cause is remanded to the Referee for proceedings not at variance with the views herein expressed. Present order accordingly.

---

2. This is not to say that the subject chattels were not included within the definitions of "motor vehicle" under Titles 39:1–1 and 39:10–2. Quite to the contrary, I hold that these chattels are motor vehicles within these statutory definitions. However, the definition of "nonconventional type motor vehicle" sheds additional light in this area.

3. Title 39:3–20 expressly provides for the issuance of "constructor" registration plates to owners of certain types of commercial vehicles engaged in construction work, and also sets forth speed limitations applicable when such vehicles are moving along a public highway.

4. No effective chattel mortgage could be created in this case. At the date of this transaction, both the Uniform Commercial Code and the Motor Vehicle Certificate of Ownership Law were in effect. The Uniform Commercial Code, N.J.S.A. 12A:-10–105, repealed existing legislation regarding chattel mortgages relevant to this transaction. The chattel mortgage was replaced by the "security interest".

5. This conforms to the dictates of Section 70a of the Bankruptcy Act, 11 U.S.C.A. § 110(a), whereby the trustee is " * * * vested by operation of law with the title of the bankrupt as of the date of the filing of the petition * * *" and Section 70c, 11 U.S.C.A. § 110(c), whereby the trustee is deemed, as of the date of bankruptcy, to be a lien creditor. See In re Dee's, Inc., 311 F.2d 619 (3rd Cir. 1962).